ELIZABETH GARMONG *vs.* JOHN B. HENDERSON.

Penobscot.    Opinion December 3, 1914.

*Amendment.   Breach of Contract of Promise of Marriage.   Date of Promise.
New Cause of Action.    New Count.    Promise.    Seduction.*

1.   In an action for breach of promise of marriage, an amendment to the declaration alleging a promise at an earlier date than those already alleged, followed by seduction, does not introduce a new cause of action.
2.   An amendment to a declaration that is itself demurrable cannot be allowed.
3.   A new count in a declaration in an action for breach of promise of marriage, which alleges a promise and a breach only inferentially and argumentatively is demurrable, and not allowable as an amendment.
4.   Every traversable fact must be alleged as of a definite day, month and year.
5.   In an action for breach of promise of marriage, when no time of performance is alleged, the plaintiff must aver that she was ready and willing to perform the contract on her part.

On exceptions by defendant.  · Exceptions sustained.

This is an action for breach of contract of marriage.   The writ was entered at the January term of Supreme Judicial Court for Penobscot County, 1914.   The defendant plead the general issue and filed a brief statement of special matters in defense.   At the April term, 1914, of said Court, the plaintiff filed a motion to amend her writ by increasing the damages therein and by inserting an additional count in her declaration.   The presiding Justice allowed the amendments, and the defendant excepted to the allowance of the additional count.

The case is stated in the opinion.

*John B. Merrill,* for plaintiff.

*L. B. Deasy, and Fellows & Fellows,* for defendant.

SITTING:   SAVAGE, C. J., KING, HALEY, HANSON, PHILBROOK, JJ.

SAVAGE, C. J.   Action for breach of promise of marriage.   The writ was dated October 16, 1913.   The original declaration contained

three counts, one alleging defendant's promise, March 10, 1910, at Washington, D. C., to marry the plaintiff "when he should be thereunto afterwards requested," a request, and a breach; another alleging, at the same time and place, mutual promises by plaintiff and defendant to marry each other, an offer by the plaintiff to marry the defendant on that date, and a breach by defendant; a third alleging, November 6, 1910, at Washington, mutual promises to marry on March 1, 1911, a request by plaintiff and a breach by defendant. The second and third counts contain also averments of the plaintiff's readiness and willingness to marry.

The plaintiff after entry asked leave to amend the writ by increasing the ad damnum, and to amend the declaration by adding a new count. Both amendments were allowed. Exceptions were taken to the allowance of the additional count, and are now before the Court for its determination.

The additional count alleges that "whereas when plaintiff was visiting at Bar Harbor, in the town of Eden, county of Hancock, and State of Maine, during the month of August, 1909, the said defendant courted and wooed her and declared to her his love and deep affection for the plaintiff; and by reason of his assurances of love and affection for the plaintiff, he persuaded and induced her to believe he was sincere in his protestations of love and affection and so believing the plaintiff then and there accepted and relied upon the defendant's said protestations of love, and in good faith accepted and reciprocated same by assuring him in return of her love and affection for him; and by reason of such mutual understandings, the plaintiff and defendant then and there, in said Bar Harbor, became and were engaged to be married to each other; and the plaintiff further says by reason of said mutual agreements, understandings and assurances, as stated last aforesaid, the plaintiff believed and so believing relied upon the fact that she and the defendant were, in good faith, engaged to be married to each other; and so believing in and relying upon the good faith of the defendant in making his said protestations of love and affection for the plaintiff, and believing and relying upon his good faith in entering into his said agreement with the plaintiff to marry her, she was induced by said defendant to permit him to kiss her, and finally in the month of February, 1910, while in the city of Washington, District of Columbia, permitted him to take other liberties and privileges with her, whereby she became pregnant with child by

the defendant and by reason thereof, she, on the eighth day of November, in the city of Washington, D. C., became a mother of said child. And plaintiff avers that by reason of the defendant's failure and refusal to carry out his mutual agreements and promises to marry the plaintiff as herein aforesaid stated, to wit, March 10, 1910, and November 6, 1910, the defendant has wantonly, deliberately and unjustifiably degraded and disgraced the plaintiff; and wantonly and without any justifiable excuse has mortified, wounded and injured the feelings and sensibilities of the plaintiff; and has wantonly and without any justifiable excuse subjected her to the greatest possible humiliation and mortification, and thereby caused her inexpressible anguish and pain of both body and mind; all of to the great and irreparable loss and damage of the plaintiff, to wit, in the sum of two hundred and fifty thousand dollars."

The defendant in argument contends that the amendment is not legally allowable for three reasons:—first because the amendment itself is demurrable; secondly because it sets up a new cause of action; and thirdly because, if allowed, it will result in great hardship and injustice to the defendant. The first two grounds present questions of law, proper for consideration now. The last was one proper to be addressed to the discretion of the presiding Justice who allowed the amendment. It raises no question of law, and is not open to exceptions. *Clark, Applt.*, 111 Maine, 399.

Disregarding for the present any want of sufficiency in the averments in the additional count, and assuming with the contention of the plaintiff that there is a sufficient allegation of a promise of marriage and of a breach, the question resolves itself to this. Having alleged in the original counts promises of marriage on March 10, 1910 and November 6, 1910, at one place, without averment of special or consequential damages, does the allegation of a promise of marriage in August, 1909, at another place, followed by seduction and pregnancy before March 10, 1910, set up a new cause of action? We think not.

A contract to marry from its very nature is attended by some peculiar incidents. It has been said that to put a contract to marry on the same footing as a bargain for a horse or a bale of hay is not in accordance with the general feeling of mankind. *Hall* v. *Wright*, Ellis, B. & E., 746; 5 Cyc., 998. The peculiarities of the contract affect the present discussion. If these parties ever promised to marry each other, no matter how many times the promise was

repeated, no matter at how many places the protestations were renewed, all together they constituted but one contract. If then, the defendant finally refused to perform his part of the contract, it was but one breach, and constituted but one cause of action. So that, if the plaintiff on March 10, 1910, and again on November 6, 1910, promised to marry the plaintiff, to show that he also made the same promise in August, 1909, does not on the face of it show a separate and independent contract. A contract to marry is evidenced ordinarily by many promises at many different times. Such is the nature of it. But there is only one contract. And in the end, if there is a breach, it is only one breach of one contract.

Sometimes causes of action are confounded with the facts and circumstances which give rise to them. *Anderson* v. *Wetter*, 103 Maine, 257. In cases like this, the ultimate breach of the contract existing at the time of breach is the cause of action. The right of action springs from the breach. It may be true indeed that earlier promises have been mutually rescinded. If so, it is a matter of defense. If there be mutual rescission, the contract up to that time is ended, and no cause of action exists. It may be that one or the other of the parties is guilty of a breach. If reconciliation and new promise follow the breach is waived. The contract continues. If no reconciliation, the cause of action continues. It may be that after mutual rescission, the parties may newly promise. If so, it is a new contract, of course, to which none of the consequences of the old contract attach.

But the point is that the allegation of several sequent promises to marry, whether in one count or several, does not raise any presumption of several contracts, but rather of the contrary. For as we have seen there can be but one existing contract that can be broken, and there is, and can be, but one actionable breach. There is and can be but one existing cause of action.

The amendment alleges a promise earlier than the ones in the original declaration. So far as the date is concerned, it is in one sense immaterial. While it is necessary in all declarations on a promise to allege a definite time, it is not necessary to prove the day as alleged. *Ripley* v. *Hebron*, 60 Maine, 379; *Duffy* v. *Patten*, 74 Maine, 396. Under the dates in the original declaration, the plaintiff might have proved a later promise, or an earlier one within the statute of limitations. If the defendant had been surprised, and

with reason, the Court could have and would have protected his rights. Where one promise is proved, all subsequent promises are merely ratifications of the first one, so far as the contract is concerned.

But the apparent purpose of the plaintiff in asking for this amendment alleging a date in 1909 is to be able to show seduction earlier than March, 1910. Evidence of seduction in February, 1910, under a contract to marry made in August, 1909, would be admissible, if alleged, as it must be. *Tyler* v. *Salley*, 82 Maine, 128. But it would be not admissible under a contract to marry not made until after the seduction.

But regardless of the purpose of the amendment, if it be proper, as we think it is, to amend so as to show an earlier promise, that is, the existence of the contract at an earlier date, we can see no reason why it is not proper to allege and show any special damages occasioned by the breach, on account of seduction at any time during the existence of the contract to marry. To allege matters in aggravation of damages is by no means to allege a new cause of action.

We conclude that in allowing the amendment, so far as the question of new cause of action is concerned, the presiding Justice violated no legal principle. The amendment in that respect being allowable as a matter of law, whether it ought to be allowed was a question addressed to his discretion.

This discussion has covered all the vital questions pertaining to the amendment, and has determined them favorably to the plaintiff. Yet the amendment in the form in which it was presented should not have been allowed. It was itself demurrable, and for that reason was not allowable. *Bean* v. *Ayer*, 67 Maine, 282; *Brown* v. *Starbird*, 98 Maine, 292. The pleader attempted to aver a promise to marry and a breach, but failed. The language of the Court in *Bean* v. *Ayers*, supra, is peculiarly apposite. "The weakness in the declaration is that, although an action of assumpsit, no promise is directly and positively asserted, but it is stated argumentatively, and only inferentially, if at all." The plaintiff after setting forth certain mutual assurance of love and affection alleges that *"by reason of such mutual understandings*, the plaintiff and defendant then and there became and were engaged to be married to each other." We think this is a non sequitur. The assurances and understandings set forth do not import a promise of marriage. And the only promise to marry, or engagement to be married, is alleged to have been *by reason of* these

understandings, that is, on account of them. We think it is not equivalent to a direct and positive averment of a promise on the part of either.

Besides, the plaintiff in this count does not aver that she was ready to perform and fulfil the contract on her part. This is a material averment in a case where no time of performance is alleged. *Hook* v. *George,* 108 Mass., 324; *Graham* v. *Martin,* 64 Ind., 567; *Burks* v. *Shain,* 2 Bibb., 341; *Clement* v. *Moore,* 11 Ala., 35; 5 Cyc., 1008; 3 Ency. Pl. & Pr., page 688. An averment that the promise was mutual is also material and necessary. *Burnham* v. *Cornwell,* 63 Am. Dec., at page 540, note; 3 Ency. Pl. & Pr., page 686.

Again the time alleged is "during the month of August, 1909." The day, month and year of every traversable fact must be alleged. *Platt* v. *Jones,* 59 Maine, 232; *Gilmore* v. *Mathews,* 67 Maine, 517. But as already stated, the party is not confined in proof to the date alleged.

Finally, no breach is alleged in this count, except inferentially, and argumentatively. The plaintiff avers only that by reason of the defendant's failure and refusal to keep his promise, she was degraded and disgraced. This is not a direct and positive averment of a breach, and is not sufficient.

Because of these manifest imperfections and insufficiencies in this count, the amendment should not have been allowed.

*Exceptions sustained.*